United States District Court
Southern District of Texas
**ENTERED**
January 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MEGAN ELIZABETH ARMSTRONG, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-00137 |
| | § | |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Megan Elizabeth Armstrong ("Armstrong") seeks judicial review of an administrative decision denying her disability benefits under Title II and Title XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. § *et seq.* ("Title II"); § 1381 *et seq.* ("Title XVI").

Before me are competing motions for summary judgment filed by Armstrong and Defendant Andrew Saul, the Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 13, 14. Having considered the motions, responsive briefing, record, and applicable law, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment (Dkt. 13) be **DENIED** and Defendant's Motion for Summary Judgment (Dkt. 14) be **GRANTED**.

## BACKGROUND

In 2013, Armstrong applied for disability benefits from the Social Security Administration (the "Administration"). Her application was denied, and she requested a hearing with an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing and found that Armstrong was not disabled, issuing his first decision in October 2014. Armstrong appealed the decision. The Appeals Council overturned the decision and remanded for reconsideration because the ALJ did not address the opinion of one of Armstrong's treating physicians. The ALJ then conducted a second hearing. In order to obtain the testimony from an additional consulting physician about the state of Armstrong's mental health, the ALJ conducted a third hearing. Finally, the ALJ issued a second decision in September 2018, finding that Armstrong was not disabled. Armstrong appealed again, but this time, the Appeals Council affirmed the ALJ's decision. This appeal of the ALJ's second decision followed.

## SUMMARY JUDGMENT STANDARD

Under the Act, individuals who have contributed to the program and have a physical or mental disability may apply for disability insurance benefits. *See* 42 U.S.C. § 423. Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard; and (2) the Commissioner's factual findings are supported by substantial evidence. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "To be substantial, evidence must be relevant and sufficient for a

2

reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). "Procedural perfection in administrative proceedings, however, is not required." *Jones v. Colvin*, 638 F. App'x 300, 303 (5th Cir. 2016) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (internal quotation marks omitted).

"[A] claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (internal quotation marks, citation, and emphasis omitted). To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Id.* at 817 (quotation marks and citation omitted). "Before reaching step four, the Commissioner assesses the claimant's

3

residual functional capacity ('RFC'). The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record. The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754 (internal quotation marks and citations omitted).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *See Newton*, 209 F.3d at 455. *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

## THE ALJ'S DECISION

The ALJ found at step one that Armstrong had not engaged in substantial gainful activity since September 28, 2012.

The ALJ found at step two that Armstrong had the following severe impairments: gastroparesis, central auditory processing disorder, and depression. The ALJ also found that Armstrong had the following non-severe impairments: hypothyroidism, hypertension, celiac artery compression syndrome, and glaucoma.

4

At step three, the ALJ found that none of these impairments met any of the Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed Armstrong's RFC, as follows:

> I find that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), occasionally lifting and carrying 20 pounds and frequently 10 pounds. She can stand and walk four of eight hours each and sit six of eight hours for a full eight hour day; has unlimited ability to push/pull and perform gross and fine movements except for occasional pushing with the lower extremities, bilaterally; can occasionally climb stairs but cannot climb ladders, ropes, or scaffolds, or run; she can occasionally bend, stoop, crouch, crawl, balance, twist, and squat; but cannot be exposed to dangerous machinery or extreme heat/cold. The claimant gets along with others, understands simple, 1-2 step instructions, concentrates and performs simple tasks, and responds and adapts to workplace changes and supervision.

Dkt. 6-3 at 18. At step four, the ALJ found that Armstrong has no past relevant work and, thus, the question of whether she is capable of performing past work is not relevant.

At step five, the ALJ concluded: "Considering [Armstrong's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." Dkt. 6-3 at 25.

Accordingly, the ALJ found that Armstrong was not disabled.

## DISCUSSION

This appeal raises four issues: (1) whether the ALJ erred by failing to consider all of Armstrong's impairments when determining her RFC; (2) whether the ALJ erred by finding an RFC that is inconsistent with a moderate limitation in concentration, persistence, and maintaining pace ("Concentration"); (3) whether the ALJ failed to properly weigh the opinions of Armstrong's treating physicians, Dr. Mehnaz Shafi ("Dr.

Shafi") and Dr. Ana Vidal ("Dr. Vidal"); and (4) whether the ALJ erred by failing to find specifically that Armstrong could maintain employment. I will address these issues separately.

### A. THE ALJ DID NOT ERR BY FAILING TO CONSIDER ALL OF ARMSTRONG'S IMPAIRMENTS IN DETERMINING HER RFC

Armstrong contends that the Code of Federal Regulations (the "Code") "require[s] that if a severe impairment exists [at step 2], all medically determinable impairments—whether severe or not—must be considered in the remaining steps of the sequential analysis." Dkt. 13-1 at 4 (citing 20 C.F.R. §§ 404.1523, 416.923). Relying on this understanding of the law, Armstrong first argues that because the ALJ found that she suffers from severe impairments, the ALJ was required to consider her additional non-severe impairments (laryngopharyngeal reflux disease, hypertension, hypothyroidism, glaucoma, and celiac artery compression) in determining her RFC. Armstrong then argues that the ALJ compounded his error by failing to reflect all of her medically determinable impairments in the hypothetical question he posed to the vocational expert.

"[Armstrong's] argument fails because it is based on a flawed interpretation of the law." *Marchi v. Berryhill*, No. 3:17-CV-00360, 2018 WL 4610669, at *4 (S.D. Tex. Sept. 4, 2018). The regulations cited by Armstrong actually provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process.

6

20 C.F.R. §§ 404.1523(c), 416.923(c). This language makes clear that an ALJ has the duty to consider the combined effect of alleged impairments to determine if a medically severe combination exists. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("[T]he ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). For example, if a claimant had impairments A (non-severe), B (non-severe), and C (non-severe), the regulations would require the ALJ to consider whether any combination of A, B, and C constitute a medically severe combination. If the ALJ found that A and B together constituted a medically severe combination, the regulations would require that the ALJ "consider the combined impact of . . . impairments [A and B] throughout the disability determination process." 20 C.F.R. §§ 404.1523(c), 416.923(c). However, the regulations would not require the ALJ to consider the impact of impairment C because "only impairments found to be medically severe (singly or in combination) need be considered throughout the disability determination." *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 607 (E.D. Tex, 2009) (emphases omitted). Thus, as illustrated by this example, the ALJ was only required to consider Armstrong's gastroparesis, central auditory processing disorder, and depression—the impairments the ALJ based his step 2 determination on—throughout the disability determination. *See Marchi*, 2018 WL 4610669, at *4. The ALJ did as he was required. "Consequently, [Armstrong's] argument that the ALJ failed to consider her non-severe impairments in determining her RFC, which is predicated on her incorrect interpretation of the law, must fail." *Id.*

Because the ALJ properly applied the Code in finding Armstrong's RFC, "the ALJ's hypothetical question to the vocational expert was not in error." *Id.*

Armstrong's argument that the ALJ erred by failing to consider all of her impairments—severe and non-severe—is not only legally incorrect, but it is also factually incorrect. In making his RFC finding, the ALJ specifically stated twice that he considered all of her symptoms and all of the evidence in determining Armstrong's RFC. *See* Dkt. 6-3 at 18 (stating that he made his RFC finding "[a]fter careful consideration of the entire record" and after "consider[ing] all symptoms"). The Fifth Circuit has ruled that I should consider such express statements as true statements of the ALJ's actions. *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (The ALJ's "decision states expressly that it was made [a]fter careful consideration of all the evidence, and we see no reason or evidence to dispute his assertion.") (internal quotation marks omitted). Moreover, the ALJ did, in fact, specifically discuss every impairment—severe and non-severe—during his analysis of Armstrong's RFC. *See* Dkt. 6-3 at 19–23. Thus, Armstrong's assertion that the ALJ failed to consider all of her impairments is simply wrong.

In sum, "the ALJ applied the proper legal standard in assessing [Armstrong's] RFC and the RFC determination is supported by substantial evidence." *Marchi*, 2018 WL 4610669, at *5.

B.  **THE ALJ DID NOT ERR BY FAILING TO INCLUDE IN HIS RFC DETERMINATION THE LIMITATIONS NORMALLY ASSOCIATED WITH A MODERATE LIMITATION IN CONCENTRATION**

In the process of analyzing Armstrong's RFC, the ALJ found that Armstrong has a moderate[1] limitation in Concentration. Armstrong argues that the ALJ's RFC determination is inconsistent with the limitations normally associated with a moderate level of impairment in Concentration under the provisions of 20 C.F.R. § 416.920a and Adult Listing 12.00C. Armstrong further argues that the ALJ's flawed RFC tainted the hypothetical posed to the vocational expert. I am not persuaded.

In making his RFC finding, the ALJ specifically stated: "The claimant gets along with others, understands simple, 1-2 step instructions, concentrates and performs simple tasks, and responds and adapts to workplace changes and supervision." Dkt. 6-3 at 18. I find that this language adequately addresses Armstrong's moderate Concentration limitation. *See Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) ("[R]estrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated [the claimant's] moderate concentration, persistence, and pace limitations such that the hypothetical question was proper."); *Menkes v. Astrue*, 262 F. App'x 410, 412 (3d Cir. 2008) ("Having previously acknowledged that [the claimant] suffered moderate limitations in concentration, persistence and pace, the ALJ [properly] accounted for these mental limitations in the hypothetical question by restricting the type of work to 'simple routine tasks.'").

---

[1] The severity of a mental limitation is rated according to "the following five-point scale: none, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4).

## C. THE ALJ DID NOT ERR BY ASSIGNING LITTLE WEIGHT TO THE OPINIONS OF ARMSTRONG'S TREATING PHYSICIANS, DR. SHAFI AND DR. VIDAL

The Code creates a broad framework for ALJs to follow in evaluating medical opinions in social security disability cases. *See* 20 C.F.R. § 404.1527. A treating physician is an "acceptable medical source who provides [a claimant], or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2). The treating physician rule provides that the opinion of a claimant's treating physician is entitled to great weight. *See Newton*, 209 F.3d at 455. Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)). The "standard of deference to the examining physician is contingent upon the physician's ordinarily greater familiarity with the claimant's injuries." *Rodriguez v. Shalala*, 35 F.3d 560, 1994 WL 499764, at *2 (5th Cir. 1994).

An ALJ may reject a treating physician's opinion "when good cause exists. 'Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.'" *Giles v. Astrue*, 433 F. App'x 241, 246–47 (5th Cir. 2011) (quoting *Newton*, 209 F.3d at 455). If good cause exists, the treating physician's

opinions are "not only not conclusive in these proceedings, but may be rejected when the evidence supports a contrary conclusion." *Johnson v. Astrue*, No. 4:11-CV-03652, 2013 WL 5785600, at *9 (S.D. Tex. Apr. 10, 2013) (quotation marks and citation omitted).

Armstrong contends that the ALJ erred when he afforded "little weight" to Dr. Shafi and Dr. Vidal's opinions. Armstrong argues this was not a harmless error because if Dr. Shafi and Dr. Vidal's opinions were given controlling weight, as the law requires, the ALJ would have found that she was disabled. I will first address Dr. Shafi's opinion and then Dr. Vidal's.

**1.  Dr. Shafi**

**Dr. Shafi's Opinion:** Dr. Shafi was Armstrong's gastroenterologist. Armstrong last visited Dr. Shafi on October 18, 2012, roughly three weeks after she underwent a celiac artery bypass surgery to remedy her celiac artery compression syndrome ("2012 Bypass Surgery"). Dr. Shafi provided his medical opinion concerning Armstrong's RFC on June 7, 2013. The relevant parts of Dr. Shafi's opinion are as follows:

- Armstrong suffered from nausea, vomiting, and gastroparesis. *See* Dkt. 7-8 at 2.

- Armstrong was only capable of sitting three hours a day, standing two hours a day, occasionally lifting up to 20 pounds, and occasionally carrying up to 20 pounds. *See id.* at 3–4.

- Armstrong would likely have to miss work more than four days per month. *See id.* at 6–7.

The ALJ's reasons for assigning Dr. Shafi's opinion little weight are as follows:

> I give little weight to the opinion of Dr. Mehnaz Shafi dated June 7, 2013. He last saw the claimant on October 18, 2012, and his opinion is quite remote and not credible through the present. It is also unsupported by the medical evidence, as discussed.

11

Dkt. 6-3 at 24 (citation omitted).

**The ALJ Had Good Cause to Assign Little Weight to Dr. Shafi's Opinion:**
The ALJ did not err in finding there was good cause to assign little weight to Dr. Shafi's opinion. More than five years passed between Dr. Shafi's opinion and the ALJ's decision. In five years, a person's symptoms may change dramatically for better or worse. The Code recognizes this reality by requiring periodic reviews of disabled persons' impairments to determine whether they are still disabled. *See* 20 C.F.R. § 416.989. Although the Fifth Circuit has not spoken directly on this issue, at least one other circuit has held that an ALJ may properly assign little weight to a remote medical opinion, especially when there are less attenuated medical opinions available. *See Johnson v. Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008) ("The ALJ properly rejected medical opinions that were remote in time, relying more heavily on more recent opinions."). In this case, the ALJ properly relied on a plethora of less attenuated medical evidence and, thus, did not err in assigning little weight to Dr. Shafi's remote opinion.

Furthermore, Dr. Shafi's opinion was based on examinations he conducted before and immediately after Armstrong's 2012 Bypass Surgery. This is particularly relevant for two reasons. First, there is considerable evidence in the record that Armstrong's celiac artery compression syndrome was a root cause of Armstrong's nausea, vomiting, and gastroparesis because the syndrome is characterized by reduced blood flow to the stomach. Since the surgery was successful in addressing this root cause, an improvement in the associated symptoms could theoretically be possible. And, in fact, the medical evidence suggests that there was improvement in Armstrong's nausea, vomiting, and

12

gastroparesis. Second, during Dr. Shafi's final examination, Armstrong was still suffering from a post-operation infection that left her with an open wound that did not heal for five months. This final examination may have reasonably left Dr. Shafi with the impression that Armstrong's condition was far worse than it turned out to be at the time of the ALJ's decision, more than five years after she recovered from surgery. Because Dr. Shafi's opinion was based on examinations conducted years ago when the state of Armstrong's condition was evidently different, the ALJ acted within his discretion in assigning Dr. Shafi's opinion little weight. *See Bolin-McNeely v. Colvin*, No. 15-CV-302-CVE-TLW, 2016 WL 11468938, at *7 (N.D. Okla. July 27, 2016) (The value of medical opinion evidence "can be dependent upon the medical evidence that forms the basis of each opinion."). Thus, the ALJ did not err in concluding that Dr. Shafi's opinion was too remote to accurately reflect the current state of Armstrong's limitations.

2. **Dr. Vidal**

**Dr. Vidal's Opinion:** Dr. Vidal, a specialist in internal medicine, was one of Armstrong's treating physicians. In Dr. Vidal's progress notes, dated June 19, 2013, she states:

> [Central auditory processing disorder] is the main impairment for her to be able to perform job related activities. She has tried hard on maximizing her abilities but still it is difficult for her to meet job Requirements [sic]. Her last job was helping at the kitchen in a night shift. Chopping, [sic] vegetables, getting food ready for the morning shift. This job involved heavy lifting (bags of potatoes, etc [sic]). It is difficutl [sic] for her to perform more complex activities or even to keep track of routine activities.
>
> She has no specialized training. It is difficult for her to perform heavy duty labor due to underlying medical conditions. She can not [sic] lift more than 10 pounds. Her central auditory processing disorder makes it difficult

13

> for her to assume higher level responsibilities. At this point, and by the best of my knowledge, she would meet criteria for disability based on above conditions, can not [sic] fulfill job requirements due to above statements and has no training or capability for higher level job assignments.

Dkt. 7-8 at 16.

The ALJ's reasons for assigning Dr. Vidal's opinion little weight are as follows:

> In June 2013, Dr. Vidal opined the claimant "would meet [the] criteria for disability" due to her medical conditions and central auditory processing disorder. . . . However, speculation as to employability carries no valuable probative weight, and the ultimate determination of disability is specifically reserved to the Commissioner pursuant to SSR 96-5p. Furthermore, I give Dr. Vidal's opinion little weight because it is not supported by her own records and inconsistent with other pertinent clinical evidence. The claimant has pain after she eats secondary to significant abdominal scar tissue, but she does not even take pain medication and the records clearly show that her gastrointestinal issues of nausea and vomiting have been resolved with surgery and medication.

Dkt. 6-5 at 57.

**The ALJ Had Good Cause to Assign Little Weight to Dr. Vidal's Opinion:** In her motion, Armstrong presents Dr. Vidal's opinion as if it contains two separate assertions: "Dr. Vidal found that Plaintiff could not lift more than 10 pounds and was disabled as a result of auditory processing disorder." Dkt. 13-1 at 6. Armstrong goes on to argue that the ALJ was not free to discount these opinions. Armstrong is wrong.

I begin with Dr. Vidal's assertion that Armstrong can lift no more than 10 pounds. I find that the ALJ had good cause to assign this portion of Dr. Vidal's opinion little weight because Dr. Vidal's notes do not indicate that she conducted any kind of clinical diagnostic techniques or examinations to determine Armstrong's limitations when lifting. In other words, this portion of Dr. Vidal's opinion is not supported by her own records.

14

This alone is good cause to discount Dr. Vidal's opinion regarding Armstrong's inability to lift more than 10 pounds. *See Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) ("The ALJ was . . . justified in giving little weight to Dr. Heinze's testimony because he did not perform any clinical examinations."); *Newton*, 209 F.3d at 456 (Good cause to discount the weight of a treating physician exists when "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.").

The remainder of Dr. Vidal's opinion, in my view, seems to mimic the disability determination analysis that the ALJ would have to later undertake. Indeed, Dr. Vidal discusses Armstrong's previous employment solely for the purpose of then asserting supposed limitations that would not allow her to pursue a similar job in the future.[2] Dr. Vidal then concludes, based on that analysis, that Armstrong meets the criteria for disability. This does not amount to a "medical opinion," and the ALJ rightfully disregarded this opinion.

To be clear, opinions that (1) conclude that a claimant is disabled or unable to work due to impairments or (2) assess a claimant's RFC "are not medical opinions" under the regulations. *See* 20 C.F.R. § 404.1527(d). Such opinions are specifically excepted from the definition of "medical opinions" because the opinions address "issues reserved

---

[2] This may well explain why Dr. Vidal describes a lifting limitation without any supporting clinical examination. Indeed, in her opinion, Dr. Vidal noted that Armstrong's previous job involved heavy lifting right before stating that Armstrong cannot lift more than 10 pounds. To the extent that Dr. Vidal opined that Armstrong could lift no more than 10 pounds solely to support her disability determination, my analysis below applies with equal force to the supposed 10 pound lifting limitation.

15

to the Commissioner," *id.*, and "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or even special significance," *Dobbins v. Colvin*, No. 6:14-CV-055-BL, 2016 WL 1179020, at *3 (N.D. Tex. Feb. 25, 2016). ALJs do not err when they fail to credit legal conclusions on issues reserved to the Commissioner because "the ALJ has sole responsibility for determining a claimant's disability status." *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Thus, the ALJ properly disregarded Dr. Vidal's opinion that Armstrong would meet the criteria for disability.

Accordingly, the ALJ did not err in assigning little weight to Dr. Vidal's opinion.

### D. THE ALJ DID NOT ERR BY FAILING TO DETERMINE WHETHER ARMSTRONG IS CAPABLE OF MAINTAINING EMPLOYMENT

Finally, Armstrong argues that the ALJ erred by failing to provide a specific finding as to whether Armstrong was capable of maintaining employment. When making an RFC determination, the ALJ assesses the nature and extent of the claimant's limitations and determines the claimant's RFC for work activity "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b)–(c), 416.945(b)–(c). Thus, the RFC determination itself encompasses the finding that the claimant is capable of maintaining employment unless "the claimant's . . . ailment waxes and wanes in its manifestation of disabling symptoms." *Perez*, 415 F.3d at 465 (quoting *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003)).

In order to show that her limitations wax and wane, Armstrong directs my attention to the opinion of Dr. Shafi in which he stated that Armstrong suffered from

16

"flare ups" of nausea and vomiting. Dkt. 7-8 at 2. As explained above, the ALJ acted within his discretion when he assigned little weight to Dr. Shafi's opinion because it was too remote. This mere scintilla of evidence is simply insufficient to show that Armstrong's condition fluctuated over time. *See Perez*, 415 F.3d at 465–66.

Armstrong also asserts that "[d]epression is a condition that is well known to demonstrate symptoms that fluctuate in intensity." Dkt. 15 at 4. I cannot simply assume that the ALJ has specialized knowledge of the symptoms associated with a psychological disorder. If the ALJ were to find that Armstrong's depressive symptoms fluctuated over time without any supporting medical evidence, the ALJ would have committed error. *See Williams v. Berryhill*, No. 3:16-CV-900-CWR-RHW, 2018 WL 736259, at *1 (S.D. Miss. Feb. 6, 2018) ("[T]he ALJ may not establish physical limitations or lack of such limitations without medical proof to support that conclusion.") (quoting *Jackson v. Comm'r of Soc. Sec.*, No. 2:11-CV-177-SAA, 2012 WL 1392340, at *3 (N.D. Miss. Apr. 20, 2012)). ALJs are specifically prohibited from making assumptions about medical conditions without medical evidence. *See Frank*, 326 F.3d at 622 ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (citation omitted).

Armstrong failed to present sufficient medical evidence that her condition fluctuates over time. As a result, the ALJ did not commit error by refraining from making a specific finding that Armstrong was capable of maintaining employment.

## CONCLUSION

Because the ALJ's decision is supported by substantial evidence, I will not disturb it. Accordingly, I **RECOMMEND** that Commissioner's Motion for Summary Judgment (Dkt. 14) be **GRANTED** and Armstrong's Motion for Summary Judgment (Dkt. 13) be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 21st day of January, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE